# 21-2524

### IN THE
# United States Court of Appeals for the Second Circuit

Moab Partners, L.P.,
*Lead Plaintiff-Appellant*,
City of Riviera Beach General Employees Retirement System, on behalf of itself
and all others similarly situated,
*Plaintiff*,
v.
Macquarie Infrastructure Corporation, James Hooke, Jay Davis, Liam Stewart,
Richard D. Courtney, Barclays Capital Inc., Robert Choi, Martin Stanley, Norman
H. Brown, Jr., George W. Carmany, III, Henry E. Lentz, Ouma Sananikone,
William H. Webb, Macquarie Infrastructure Management (USA) Inc.,
*Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of
New York, No. 18-cv-3608 (Hon. Vernon S. Broderick, U.S.D.J.)

## LEAD PLAINTIFF-APPELLANT'S OPPOSITION TO DEFENDANTS-APPELLEES' MOTION TO STAY ISSUANCE OF MANDATE

SALVATORE J. GRAZIANO
LAUREN AMY ORMSBEE
JESSE L. JENSEN
BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1400

*Counsel for Lead Plaintiff-Appellant
Moab Partners, L.P.*

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT...........................................................................1

II.  ARGUMENT .................................................................................................4

      A.   There Is No Irreparable Harm ................................................................5

      B.   MIC Fails to Demonstrate a Reasonable Probability that the Supreme Court Would Grant Its Certiorari Petition ...........................11

            1.   The *Leidos* Question No Longer Warrants Review.................12

            2.   This is Not the Proper Case For the Supreme Court To Revisit the *Leidos* Question. ......................................................15

      C.   MIC Fails to Demonstrate a Fair Prospect that the Supreme Court Would Reverse the Panel's Decision .........................................18

III. CONCLUSION ...........................................................................................22

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Asay v. Pinduoduo Inc.*,
   2021 WL 3871269 (2d Cir. Aug. 31, 2021) .......................................................15

*Books v. City of Elkhart*,
   239 F.3d 826 (7th Cir. 2001) ...........................................................................18

*City & Cnty. of San Francisco v. Sheehan*,
   575 U.S. 600 (2015) ..........................................................................................17

*City of Springfield v. Kibbe*,
   480 U.S. 257 (1987) ..........................................................................................17

*Conkright v. Frommert*,
   556 U.S. 1401 (2009) ............................................................................5, 11, 18

*Edelman v. Jordan*,
   414 U.S. 1301 (1973) .......................................................................................10

*FTC v. Std. Oil Co. of Ca.*,
   449 U.S. 232 (1980) ............................................................................................6

*Hoggard v. Rhodes*,
   141 S. Ct. 2421 (2021) ......................................................................................17

*Khulumani v. Barclay Nat'l Bank Ltd.*,
   509 F.3d 148 (2d Cir. 2007) ...............................................................................4

*Ledbetter v. Baldwin*,
   479 U.S. 1309 (1986) ..........................................................................................9

*Nat'l Football League v. Ninth Inning, Inc.*,
   141 S. Ct. 56 (2020) ..........................................................................................16

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ....................................................................15, 21

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) .............................................................................12

*Rostker v. Goldberg*,
    448 U.S. 1306 (1980)..........................................................................9

*Ry. Labor Execs.' Ass'n v. Gibbons*,
    448 U.S. 1301 (1980)..........................................................................9

*Sampson v. Murray*,
    415 U.S. 61 (1974)..............................................................................6

*Senne v. Vill. of Palatine*,
    695 F.3d 617 (7th Cir. 2012) ...........................................................5, 6

*Shannon v. Gen. Elec. Co.*,
    186 F.3d 186 (2d Cir. 1999) .............................................................10

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ........................................................*passim*

*Strougo v. Barclays PLC*,
    194 F. Supp. 3d 230 (S.D.N.Y. 2016) .................................................6

*Virginia Military Institute v. United States*,
    508 U.S. 946 (1993)..........................................................................16

*In re Worldcom Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ..............................................10

**STATUTES & RULES**

17 C.F.R. § 229.303 (Item 303)....................................................*passim*

17 C.F.R. § 240.10b-5..................................................................*passim*

Fed. R. App. P. 41(d)(2)(A)...............................................................1, 4

Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*................................*passim*

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*.................*passim*

**OTHER AUTHORITIES**

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities
    Class Action Litigation: 2021 Full-Year Review* (NERA 2022).......................15

Brief for the United States as Amicus Curiae Supporting Respondents,
*Leidos, Inc. v. Ind. Pub. Ret. Sys.*,
No. 16-581, 2017 WL 4004533 (Sept. 7, 2017)......................................13, 19, 21

Lead Plaintiff-appellant Moab Partners, L.P. ("Plaintiff") files this opposition to the motion to stay this Court from issuance of the mandate, filed by defendants-appellees Macquarie Infrastructure Corporation, James Hooke, Jay Davis, Liam Stewart, Richard D. Courtney, Robert Choi, Martin Stanley, Norman H. Brown, Jr., George W. Carmany, III, Henry E. Lentz, Ouma Sananikone, William H. Webb, and Macquarie Infrastructure Management (USA) Inc. (collectively, "MIC") (cited as "Stay Br." herein).[1]

## I.  PRELIMINARY STATEMENT

MIC does not satisfy the heavy burden required under Federal Rule of Appellate Procedure 41(d)(2)(A) for this Court to stay issuance of the mandate.

On December 20, 2022, a unanimous panel of this Court (the "Panel") vacated the district court's judgment on MIC's motion to dismiss, finding that Plaintiff had sufficiently alleged claims under both the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), and remanded for further proceedings (the "Order").

The Panel first held that "[t]he Complaint adequately alleges Defendants made material omissions **and** false or misleading statements" actionable under both the Securities Act and Exchange Act. Order at 4. Specifically, the Panel sustained

---

[1] Unless otherwise noted, emphasis is added and internal citations and quotations are omitted.

1

actionable falsity on three independent grounds: (a) Defendants failed to disclose the potential impact of a government regulation ("IMO 2020") that was "known to Defendants and reasonably likely to have material effects on MIC's financial condition or results of operation," as required by Item 303 of Regulation S-K in order to make their filings with the Securities Exchange Commission ("SEC") truthful (*id.* 5-7); (b) Defendants made affirmative misstatements, noting specifically those concerning their "base of customers," which were "half-truths" that omitted information necessary to make a proper assessment of the risks from IMO 2020, rejecting Defendants' argument that risk disclosures regarding "'changes in government regulations' and 'capital expenditures' related to repurposing tanks" were sufficient to "reveal the information necessary for the investing public to make a proper assessment of the alleged risks" about IMO 2020 (*id.* 7-8); and (c) Defendants made other misrepresentations that were not "puffery or expression of corporate optimism" (*id.* 5 & n.1).

The Panel further held that Plaintiff adequately alleged that MIC "acted with scienter in making the material omissions ***or*** false or misleading statements," in satisfaction of the Exchange Act pleading requirements. Order at 8. *See also id.* at 9 ("Defendants did not make corresponding disclosures ***and***, instead, allegedly minimized the exposure that IMTT faced from IMO 2020.").

MIC moved for a rehearing *en banc* on January 3, 2023, solely on the grounds that the Panel's rulings related to Item 303 conflicted with the Second Circuit's prior opinion in *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 107 (2d Cir. 2015). On January 27, 2023, this Court denied Defendants' request.

This action should now return to the district court and—nearly five years since it was first filed—finally progress to discovery. Instead, MIC asks this Court to impose further delay based on MIC's representation that it will ask the Supreme Court to overturn established Second Circuit precedent. Stay Br. 1-2. MIC's forthcoming petition for certiorari is insufficient grounds for any further delay, and their request for a stay of issuance of the mandate should be denied.

***First***, MIC will suffer no irreparable harm from issuance of the mandate. MIC admits that its Supreme Court petition will challenge just one portion of the Panel's Order that relied on Item 303 to reverse dismissal on falsity of only some of the claims. Stay Br. 21. In particular, the certiorari petition will have no direct impact on Plaintiff's *other* sustained Exchange Act claims, much less on Plaintiff's sustained Securities Act claims. Importantly, the discovery on all those claims will cover the same ground as the claims related to Item 303. Thus, even in the unlikely circumstances of both certiorari being granted and this Court being reversed, a stay will not prevent any harm, much less irreparable harm. To the contrary, a stay would

*impose* harm by further delaying Plaintiff and injured investors from pursuing their meritorious claims.

**Second**, while MIC's failure to establish irreparable harm is sufficient on its own for this Court to deny their stay motion, denial is further warranted because MIC fails to sufficiently demonstrate a reasonable probability that the Supreme Court would grant its certiorari petition.

**Third**, even in the unlikely event that certiorari is granted, MIC has not established that MIC has a fair prospect of obtaining a reversal of this one facet of the Panel's well-reasoned decision. Even assuming that MIC preserved the Item 303 Exchange Act issue, MIC fails to establish substantive legal errors in the Panel's decision or the Second Circuit's longstanding precedent on this issue.

Ultimately, Plaintiff's claims will move forward and there is no cause for further delay. The Court should deny MIC's motion to stay issuance of the mandate.

## II.  ARGUMENT

Federal Rule of Appellate Procedure 41(d)(2)(A) "requires the party seeking a stay of the mandate to show that the certiorari petition would present a substantial question and that there is good cause for a stay." *Khulumani v. Barclay Nat'l Bank Ltd.*, 509 F.3d 148, 152 (2d Cir. 2007). "Even if the movant makes the required showing, [the Court's] decision to grant the stay is a matter of discretion." *Id.* Exercising such discretion to "grant of a motion to stay the mandate 'is far from a

foregone conclusion.'" *Senne v. Vill. of Palatine*, 695 F.3d 617, 619 (7th Cir. 2012). Rather, such "relief is granted only in 'extraordinary cases.'" *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009).

To warrant a stay of the mandate, the Supreme Court has explained that, at the very least, a movant "must demonstrate" three criteria: "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction; (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous; ***and*** (3) a likelihood that irreparable harm will result from the denial of a stay." *Id.* MIC fails to satisfy these threshold criteria. This is not the sort of "extraordinary case[]" that warrants the exercise of this Court's discretion to stay issuance of its mandate. *Id.*

## A.    There Is No Irreparable Harm

At the outset, MIC does not—and cannot—establish that it would suffer any irreparable harm that would justify the extraordinary step of staying the mandate.

The only "harm" that MIC references are "[t]he financial burdens of litigation" generally, claiming that "[Plaintiff] will likely press for discovery and motion practice," which will expend "significant costs and resources . . . all of which will have been unnecessary if MIC prevails before the Supreme Court." Stay Br. 19. As MIC concedes, however, the only litigation that would proceed prior to the case returning following Supreme Court review (if any) would be long overdue discovery

5

and related motion practice. This does not suffice to establish ***irreparable*** harm: "injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also, e.g.*, *FTC v. Std. Oil Co. of Ca.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Senne*, 695 F.3d at 622 (no irreparable harm where "the court of appeals merely reversed the grant of a motion to dismiss for failure to state a cause of action, [and] there is no monetary judgment at issue"); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("It is well-established by courts in the Second Circuit, however, that the prospect of incurring litigation costs, even if substantial, is not sufficient to constitute irreparable injury.").

The Court need not even reach the issue of whether financial harm is grounds for a stay, however, because MIC will face identical discovery in the district court even in the unlikely circumstances that the Supreme Court were to grant certiorari ***and*** then reverse the Panel's decision concerning the application of Item 303 disclosure obligations to Exchange Act claims. This is because the scope of discovery, identity of Defendants, and length of the Class Period are not impacted by the single issue to be appealed, and thus a stay would not avoid any harm at all, rendering MIC's argument that discovery "will have been unnecessary if MIC prevails before the Supreme Court" (Stay Br. 19) untrue.

6

**First**, MIC does not purport to challenge this Court's disposition of Plaintiff's Securities Act claims, which are based on the same omissions and misstatements and will require the same discovery as Exchange Act claims for which MIC will seek Supreme Court review. The Panel vacated dismissal of the entirety of Plaintiff's Securities Act claims, which are alleged against all the Defendants seeking a stay here, in addition to non-movant Barclays Capital,[2] relate to many of the same alleged underlying omissions and misstatements as the Exchange Act claims, and span the entire Class Period in scope of discovery. The offering documents that form the basis of the Securities Act claims incorporated by reference statements made on the first day of the Class Period (*see, e.g.*, JA-103(¶¶357, 359)), and the falsity of these statements was not revealed until the last day of the Class Period (JA-123(¶352)). Therefore, staying the mandate would at most delay, not avoid, discovery even if the Supreme Court ultimately granted MIC's petition and reversed this Court's judgment on Item 303.

**Second**, the Panel vacated dismissal of numerous actionable "half truths" and other misstatements under the Exchange Act that also are not impacted by any forthcoming appeal to the Supreme Court. *See* Order at 4 ("The Complaint

---

[2] *See* Stay Br. 1 n.1. Barclays is a Defendant only with respect to the Securities Act claims; its abstention further confirms that those claims are not impacted by any Supreme Court review.

adequately alleges Defendants made material omissions **and false or misleading statements**."); *id.* at 5 & n.1 (noting that "the majority of Defendants' alleged misstatements are not actionable, including several constituting non-actionable puffery or expression of corporate optimism," noting that the district court need not consider a few specific misstatements on remand)[3]; *id.* at 7 ("The district court also erred in determining that Plaintiff failed to plead any actionable omissions or 'half-truths.'"); *id.* at 8 ("We further conclude that the Complaint adequately alleges that Defendants acted with scienter in making the material omissions **or false or misleading statements**."); *id.* at 9 ("Defendants did not make corresponding disclosures and, instead, allegedly **minimized the exposure that IMTT faced from IMO 2020**.").

MIC concedes, as it must, that at least some of those claims will go forward irrespective of the certiorari petition. Stay Br. 21. Yet MIC does not accurately represent the scope and identity of the claims sustained independent of the sustained Exchange Act omissions related to Item 303; MIC makes no explicit mention of the Securities Act claims and inaccurately limits the only live claims to those involving omissions "that relate to MIC's customers." Stay Br. 21. As discussed above, the

---

[3] MIC's appendix purporting to list the alleged misstatements included in its motion to dismiss briefing identified challenges to just 12 statements on the basis of puffery and/or corporate optimism—leaving nearly two dozen other alleged misstatements arguably viable and at issue even by Defendants' own counting. *See* JA-804-25.

scope of the "live" claims is broader and implicates the same scope of discovery as those claims related to Item 303 and the Exchange Act.

The Order confirms that the scope of the half-truths and other misstatements overlaps with the omissions found actionable under Item 303 and would involve the same discovery. Because Defendants will undertake the same discovery *regardless* of the outcome of the certiorari petition, there is no harm—let alone irreparable harm—that will result from properly returning this case to the district court for further proceedings.[4]

Particularly given that MIC will suffer no irreparable harm from issuance of the mandate, this is not a "close case" where it would be appropriate to "balance the equities" between Defendants and Plaintiff, as MIC suggests. Stay Br. 18. However, any balancing tips the scale heavily in favor of Plaintiff. As described above, even in the event that Defendants' certiorari petition is granted ***and*** the Supreme Court

---

[4] The cases cited by MIC make plain the inadequacy of MIC's request, as those cases concern issues far beyond the "burden of litigation" complained of by MIC here, such as a State's "administrative costs of changing its [welfare] system", *Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986); the United States Government expending resources relating to implementing the military conscription registration process, *Rostker v. Goldberg*, 448 U.S. 1306, 1310 (1980) (Brennan, J., in chambers); preventing an unconstitutional taking from an estate that would have forced millions in unrecoverable payments, *Ry. Labor Execs.' Ass'n v. Gibbons*, 448 U.S. 1301, 1305 (1980); and funds paid out to welfare recipients that the State would be unlikely to recover, *Edelman v. Jordan*, 414 U.S. 1301, 1302-03 (1973) (Rehnquist, J., in chambers).

overrules the Panel's Order, the case will still proceed, and the parties will conduct essentially the same discovery, only they will do so after months of unnecessary delay.

Even if a ruling by the Supreme Court on Defendants' Item 303 arguments might reduce the burden of discovery and litigation to some extent—which it should not—that modest benefit is greatly outweighed by the prejudice of yet further delay in an already long-delayed case. This case has been pending since April 2018; Plaintiff has been waiting ***nearly five years*** just even to begin discovery. This passage of time prejudices Plaintiff's ability to prosecute its claims. *See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) ("prolonged" delay may prejudice a party where it "increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult"); *In re WorldCom Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002) (holding, on motion to lift PSLRA discovery stay, that documents "must be produced in order to prevent undue prejudice to the interests of the putative investor class it represents" based on, *inter alia*, "its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape"). These concerns are further magnified here given the extensive corporate reorganizations MIC has undertaken since Plaintiff's complaint was filed, including selling the IMTT subsidiary at issue here; merging

10

with an affiliate of Argo Infrastructure Partners; and delisting from the New York Stock Exchange.[5]

Accordingly, because MIC has failed to satisfy its burden of showing irreparable harm, and cannot show that the balance of equities tilts in its favor, its request for a stay should be denied.

## B. MIC Fails to Demonstrate a Reasonable Probability that the Supreme Court Would Grant Its Certiorari Petition

MIC's stay request also fails for an independent reason: MIC fails to sufficiently demonstrate a "reasonable probability" that its certiorari petition will be granted. *Conkright*, 556 U.S. at 1402. At the outset, such petitions are rarely granted. Supreme Court of the United States, Frequently Asked Questions, https://www.supremecourt.gov/about/faq_general.aspx (last visited February 10, 2023) (only approximately 80 of the 7,000-8,000 petitions for a writ of certiorari are granted each Term, roughly 1%). MIC does not sufficiently establish that it will overcome these long odds.

---

[5] *See, e.g.*, *MIC Announces Completion of Merger with* Argo, Macquarie (July 21, 2022), https://www.micinc.com/about/news/2021/mic-announces-completion-merger-argo.html; *see also MIC Announces Closing of Sale of IMTT, Record Date for Special Dividend of $11.00 Per Share*, Macquarie (December 23, 2020) https://www.micinc.com/about/news/2020/mic-annodunces-closing-sale-imtt.html.

### 1. The Leidos *Question No Longer Warrants Review.*

Even if this case were an appropriate vehicle for deciding the Item 303 question MIC presents, the Supreme Court would be unlikely to take up the question after taking a fresh look at the state of the law in the lower courts.

MIC overstates the alleged circuit conflict. Stay Br. 6. Contrary to Defendants' claim, the Second Circuit's approach to Item 303 is based on—and consistent with—the Third Circuit's ruling in *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000). In *Oran*, the Third Circuit held that a violation of Item 303 "does not *automatically* give rise to a material omission under Rule 10b-5" because the standard for materiality under Item 303 is less demanding than the standard for materiality under Rule 10b-5's private right of action. *Id.* at 288. But the Third Circuit acknowledged that if omitting information required under the Rule "would constitute a material omission under Rule 10b-5," then liability could follow. *Id*. at 287. This Court agreed with both points in *Stratte-McClure*. The Court acknowledged that given the difference in materiality standards, "failure to make a required disclosure under Item 303" is "not, by itself sufficient to state a claim under Section 10(b)." *Id*. at 102. Accordingly, the Court held, "failure to make a required disclosure under Item 303 . . . is an omission that **_can_** serve as the basis for a Section 10(b) securities fraud claim," but only "*if the omission satisfies the materiality requirements*" for a 10(b) claim. *Id*. at 99; *see also* Order at 5-6.

To the extent the Ninth Circuit has taken a different view of *Oran*, the Ninth Circuit's reading is mistaken. Importantly, the Ninth Circuit has not had occasion to revisit its position since *Stratte-McClure* explained the proper reading of the Third Circuit's precedent or after the United States expressed its agreement with the Second and Third Circuit's position in its amicus brief to the Supreme Court in *Leidos*. *See* Brief for the United States as Amicus Curiae Supporting Respondents, *Leidos, Inc. v. Ind. Pub. Ret. Sys.*, No. 16-581, 2017 WL 4004533 (Sept. 7, 2017) (the "U.S. *Leidos* Brief"). Accordingly, the Supreme Court is likely to think that it is premature to conclude that the shallow circuit conflict MIC asserts will endure or warrants review at this time.[6]

There also is no basis for MIC's claims that the Panel's decision "exacerbates" the circuit split because it "effectively eliminates the limitations *Stratte-McClure* established by greatly expanding the scope of disclosures 'required' under Item 303 and conflating the failure to make such 'required' disclosures with scienter.'" Stay Br. 12-13. The Panel's unpublished decision is non-precedential and accordingly cannot change the law of the circuit established by *Stratte-McClure*. In any event, there was no deviation. The Panel engaged in a straightforward application of

---

[6] Defendants misleadingly cite other circuit rulings as disagreeing with the Second Circuit's approach, many of which actually predate the purported circuit split and all of which expressly do not reach the Item 303 issue. At most, these decisions undermine MIC's claims of any exigency to address the issue.

*Stratte-McClure*. The Panel never said failure to make an Item 303 disclosure proves scienter in its own right, or even ***mentioned*** Item 303 in its scienter discussion, but instead engaged in a traditional, *Tellabs*-based analysis. The Panel first observed that the Complaint alleged "sufficient circumstantial evidence" that Defendants "were each in a unique position to knowing" the exposure facing IMTT from IMO 2020. Order at 8. And the Panel did not stop at this sufficiency finding, adding that the timing of certain events, such as contract renewals and a crucial acquisition, were strong circumstantial evidence that "taken collectively" plead "at least as strong as any opposing inference" of scienter. *Id.* at 9.[7]

Finally, MIC claims that certiorari is likely because securities litigation related to Item 303 has grown "more pressing" since 2017 because of an increased risk of forum shopping in favor of this Circuit. Stay Br. 13. There is simply no evidence that this Circuit has been chosen over the Ninth Circuit based on Item 303. To the contrary, even the report cited by MIC states that the Ninth Circuit remains among the nation's busiest for federal securities litigation, with filings trending higher. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 5 (NERA 2022),

---

[7] The Court should further reject Defendants' untrue claim that reversal on Item 303 "would all but dispose of the scienter issue" because it misleadingly omits the Panel's ruling on the affirmative misstatements and half-truths, discussed above.

https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf (showing Ninth Circuit securities class action filings trending higher since 2017, with more filings in 2020 than the Second Circuit). And MIC's claim that this Court has improperly fueled Item 303 claims is contradicted by the fact that every post-*Leidos* rulings by the Second Circuit cited by MIC has *rejected* such claims. *See, e.g., Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at \*4 n.5 (2d Cir. Aug. 31, 2021) ("Item 303 does not provide an actionable basis for Plaintiffs' claims" because materiality requirements were not met).

### 2. *This is Not the Proper Case For the Supreme Court To Revisit the* **Leidos** *Question.*

Even if the Supreme Court believed that the *Leidos* question still warranted review in an appropriate case, this case presents an exceptionally poor vehicle for resolving it.

*First*, this case does not squarely present the conflict because Plaintiff would prevail even under the Ninth Circuit's standard. The Ninth Circuit has held that although Item 303 "does not create a duty to disclose for purposes of Section 10(b) and Rule 10b-5," a plaintiff may still prevail by showing that without the Item 303 disclosure, the defendant's other statements were materially misleading. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). Plaintiff's allegations do exactly that. Plaintiff does not only allege that MIC's SEC filings were false and misleading based on violations of Item 303, but ***also*** explicitly alleges

15

that specific disclosures by MIC raised a duty to disclose information necessary to make its statements not misleading—and that MIC omitted such information. *See, e.g.*, JA-58-59, 80, 125(¶¶132, 271, 357) (alleging Defendants' SEC filings discussed risks from environmental regulations, oil demand and pricing, and contract renewals, but omitted full and complete information about the specific risks faced by MIC as a result of the dramatic changes occasioned by IMO 2020 and further that those changes were already being felt in the market). These allegations suffice under even the Ninth Circuit's standards.

*Second*, the interlocutory posture of the case makes it a poor candidate for review. The Panel remanded for further proceedings, including on claims unaffected by the question upon which MIC proposes to seek certiorari. Further litigation in the case may moot the Item 303 question (for example, if Defendants prevailed on that claim on the merits) or render it unimportant to the outcome of the case. To avoid such prospects, the Supreme Court "generally await[s] final judgment in the lower courts before exercising [its] certiorari jurisdiction." *Virginia Military Institute v. United States*, 508 U.S. 946 (1993) (Scalia, J., respecting denial of certiorari); *see also, e.g.*, *Nat'l Football League v. Ninth Inning, Inc.*, 141 S. Ct. 56, 56-57 (2020) (Kavanaugh, J., respecting denial of certiorari) (concluding case presented a certiorari-worthy question, but concurring in denial of certiorari because "the case

comes to us at the motion-to-dismiss stage, and the interlocutory posture is a factor counseling against this Court's review at this time").

*Third*, as discussed above, Defendants will ask the Supreme Court to decide a question that will not resolve the case or even materially change its scope. The Court generally does not decide questions in the context of a case in which the answer will have no meaningful effect. *Supra* at 6-11.

*Fourth*, MIC never raised the question upon which it will seek review before the Panel or the trial court; it was raised for the very first time in MIC's petition for rehearing. At every earlier stage of the proceedings, MIC implicitly conceded the scope of Item 303, instead contending that Plaintiffs failed to plead sufficient facts demonstrating a violation of Item 303. *See*, *e.g.*, JA-162; Appellees' Br. at 22, 29, 37.[8] As MIC did not raise the issue of whether an Item 303 violation could support an Exchange Act claim in either the district court or its appellate briefing, the Panel did not rule on the issue. *See, e.g.*, *City of Springfield v. Kibbe*, 480 U.S. 257, 259 (1987) (The Supreme Court "ordinarily will not decide questions not raised or litigated in the lower courts."); *Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021) (Thomas,

---

[8] MIC seemingly does not plan to ask the Supreme Court to review the panel's fact-bound application of Item 303 to the facts of this particular case. Wisely so. *See City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 619 (2015) (petitions are "rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law").

J., respecting denial of certiorari) (concurring in denial of certiorari because the petitioner "did not raise or brief these issues below").

### C. MIC Fails to Demonstrate a Fair Prospect that the Supreme Court Would Reverse the Panel's Decision

Finally, MIC fails to sufficiently establish a "fair prospect" that the Supreme Court will reverse the Panel's decision. *See Conkright*, 556 U.S. at 1402. This requires the Panel to "perform the predicative function of anticipating the course of decision in the Supreme Court of the United States." *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001). MIC asks this Court to predict that the Supreme Court will overturn well-reasoned Second Circuit decisions in favor of a Ninth Circuit opinion that the Second Circuit already determined was wrongly decided. *See Stratte-McClure*, 776 F.3d at 103-04.

Contrary to MIC's attacks (Stay Br. 16), this Court's Item 303 jurisprudence does not "broaden[] the scope" of Section 10(b)'s private right of action. Indeed, as the SEC argued on behalf of the United States in its amicus brief in *Leidos*, this Circuit's interpretation of Item 303 disclosure obligations is entirely consistent with longstanding Section 10(b) jurisprudence. *See* U.S. *Leidos* Brief. The Second Circuit has simply held that Item 303, which imposes an "affirmative duty to disclose," among other things, "known trends or uncertainties" in SEC filings, "imposes the type of duty to speak that can, in appropriate cases, give rise to liability under Section 10(b)." *Stratte-McClure*, 776 F.3d at 101-02. That is because "omitting an item

18

required to be disclosed on a 10-Q can render that financial statement misleading." *Id*. at 102. Further, based on its reading of the statutory text and other pertinent authorities, the Second Circuit correctly concluded that "allowing a 10b-5 cause of action to arise from a failure to disclose under Item 303 does not exceed what Congress 'authorize[d] when it first enacted the [Securities Exchange Act].'" *Id*. at 102 n.5.

Contrary to MIC's contention that *Stratte-McClure* "lower[s] the bar for pleading the 'omission' element of a 10(b)/10b-5 claim" (Stay Br. 16), Item 303 is simply one of many provisions "prevent[ing] unscrupulous issuers from exploiting the trust that reasonable investors place in submissions made in purported compliance with SEC disclosure requirements." *See* U.S. *Leidos* Br., 2017 WL 4004533, at *6; *see also Stratte-McClure*, 776 F.3d at 102 (citing cases). Since Item 303 requires issuers to make certain disclosures in SEC filings, "a reasonable investor would interpret the absence of an Item 303 disclosure to imply the nonexistence of 'known trends or uncertainties ... that the registrant reasonably expects will have a material ... unfavorable impact on ... revenues or income from continuing operations." *Id*. If anything, pleading an Item 303 violation as a basis for §10(b) liability is quite difficult because, as the Panel observed, "Item 303 requires that a company disclose certain information 'where a trends, demand, commitment, event or uncertainty is both ***presently known*** to management and reasonably likely

to have material effects on the registrant's financial conditions or results of operations." Order at 6. And the Second Circuit has reinforced that Item 303 applies only to "*known* trends or uncertainties." *Martin v. Quartermain*, 732 F. App'x 37, 42 n.3 (2d Cir. 2018). This knowledge criteria heightens a plaintiff's pleading burden. Indeed, the difficulty faced is evident from the fact that nearly all the recent Second Circuit cases involving Item 303 omissions cited by MIC **affirm** dismissal of such claims. *See* Stay Br. 14 n.4.

MIC claims that *Stratte-McClure* "did not fully grapple with the import" of the difference between Item 303's test for a duty to report and the materiality standards of *Basic v. Levinson*. Stay Br. 17. MIC is wrong. This Court explicitly acknowledged that "failure to make a required disclosure under Item 303 . . . is not by itself sufficient to state a claim for securities fraud under Section 10(b)" and **directly** addressed *Basic*'s materiality inquiry, ruling that "a violation of Item 303's disclosure requirements can **only** sustain a claim under Section 10(b) and Rule 10b-5 if the allegedly omitted information satisfies *Basic*'s test for materiality." *Stratte-McClure*, 776 F.3d at 102-03. As the Court explained, "a plaintiff must first allege that the defendant failed to comply with Item 303 in a 10-Q or other filing. Such a showing establishes that the defendant had a duty to disclose. A plaintiff must then allege that the omitted information was material under *Basic*'s probability/magnitude test[.]" *Id*. The Court further determined that a plaintiff

bringing claims based on Item 303, like any §10(b) claim, must also sufficiently plead scienter, reliance, and loss causation. 776 F.3d at 103. This aligns with the Panel's ruling here.

By contrast, the Ninth Circuit appears to conflate the concepts of duty to disclose and materiality, two separate (though related) inquiries under §10(b). *See* 768 F.3d at 1055 ("[W]hat must be disclosed under Item 303 is not necessarily required under the standard in *Basic*."). Indeed, the United States submitted an amicus brief to that effect, arguing that the Ninth Circuit's ruling was in error and in favor of the Second Circuit's interpretation. *See* U.S. *Leidos* Brief 2017 WL 4004533, at *30.

While Plaintiff believes that there is a reasonable prospect that the Supreme Court will deny certiorari at this juncture and should, at a minimum, allow the Ninth Circuit to reconsider its own minority opinion and misreading of *Oran* (*supra* at 11-18), should the Supreme Court take on the issue at this point, it should find that the Second Circuit's reasoning is logical and comports most plainly with longstanding precedent: "failure to comply with Item 303 in a Form 10-Q can give rise to liability under Rule 10b-5 so long as the omission is material under *Basic*, and the other elements of Rule 10b-5 have been established." *Stratte-McClure*, 776 F.3d at 103-04. MIC offers no fair prospect that this decision would (or should) be overturned.

## III.  CONCLUSION

For all the foregoing reasons, the Panel should deny MIC's motion to stay issuance of the mandate in this action.

DATED:      February 13, 2023                    Respectfully submitted,

                                                 */s/ Salvatore J. Graziano*
                                                 Salvatore J. Graziano
                                                 Lauren A. Ormsbee
                                                 Jesse L. Jensen
                                                 **BERNSTEIN LITOWITZ BERGER**
                                                 **  & GROSSMANN LLP**
                                                 1251 Avenue of the Americas
                                                 New York, NY 10020
                                                 Telephone: (212) 554-1400
                                                 Facsimile: (212) 554-1444
                                                 salvatore@blbglaw.com
                                                 lauren@blbglaw.com
                                                 jesse.jensen@blbglaw.com

                                                 *Counsel for Lead Plaintiff-Appellant*
                                                 *Moab Partners, L.P.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This document complies with the Fed. R. App. P. 27(d)(2)(A) because it contains 5,123 words, excluding the sections that do not count towards the limitation pursuant to Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

Dated:  February 13, 2023            */s/ Salvatore J. Graziano*
                                      Salvatore J. Graziano